UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
69 BLOOMINGDALE, LLC,

                          Plaintiff,

         -against-

CORAL GRAPHICS, INC. and F.C.
PROPERTIES INC.,

                        Defendants.
------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
20-cv-2613 (RPK)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court, on referral from the Honorable Rachel P. Kovner for Report and Recommendation, is Plaintiff's 69 Bloomingdale, LLC ("Plaintiff" or "69 Bloomingdale") Motion for Default Judgment. *See* DE [13]. By way of Complaint filed on June 11, 2020, Plaintiff commenced this action against Coral Graphics, Inc. ("Coral Graphics") and F.C. Properties Inc. ("F.C. Properties," together with Coral Graphics, "Defendants"), alleging violations of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*., as well as claims for private nuisance, trespass and negligence under New York State law. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. After Defendants failed to appear or otherwise defend this action, the Clerk of the Court entered default against them on October 15, 2020. *See* DE [12]. On December 23, 2020, Plaintiff filed the instant motion, which Judge Kovner referred to this Court for a recommendation as to whether it should be granted, and if so, to determine the appropriate remedies.

*See* Electronic Order dated December 26, 2020.  For the reasons set forth herein, it is respectfully recommended that Plaintiff's motion be granted and it be awarded monetary relief as described below.

## I.  BACKGROUND

All relevant facts are taken from the Complaint and the instant motion papers and assumed true for purposes of resolving this motion.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

69 Bloomingdale is a New York limited liability company, with its principal place of business in Nassau County, and the current owner of the properties located at 69-83 Bloomingdale Road in the Town of Hicksville, County of Nassau, State of New York (the "Bloomingdale Site").  *See* Compl. ¶¶ 5-6.  Coral Graphics is a New York corporation operating as a printing company that specializes in digital and specialty printing, and that routinely uses solvents in its operations.  *See id.* ¶¶ 10-11.  F.C. Properties is a New York corporation and the current owner of the property located at 840 South Broadway in the Town of Hicksville, County of Nassau, State of New York, an industrial and commercial manufacturing facility, at which Coral Graphics conducted its operations at all times relevant to this action (the "Coral Graphics Site").  *See id.* ¶¶ 8-9, 12-13, 15.  The Coral Graphics Site is located upgradient of the Bloomingdale Site.  *See id.* ¶ 13.

The New York State Department of Environmental Conservation ("NYSDEC") classified the Coral Graphics Site as a Class C Hazardous Waste Site.  *See id.* ¶ 16. In 2005, under NYSDEC guidance, a soil vapor extraction/air sparging system

("SVE/AS") was installed on the Coral Graphics Site, which helped to mitigate the flow of contamination from it to the Bloomingdale Site. *See id.* ¶ 17.  Defendants shut the SVE/AS system down in 2013, after which a plume of contaminated groundwater migrated from the Coral Graphics Site onto the Bloomingdale Site, leading to the detection of an increased presence of the contamination there in 2019.  *See id.* ¶¶ 18-20.  Plaintiff alleges that the increased levels of contamination on the Bloomingdale Site, to which the groundwater flows downgradient from the Coral Graphics Site, occurred as a direct result of Defendants turning off the SVE/AS system and allowing that contamination to escape containment on the Coral Graphics Site.  *See id.* ¶¶ 21-22.

On August 9, 2019, the NYSDEC notified 69 Bloomingdale that it classified the Bloomingdale Site as a Potential Hazardous Waste Disposal Site.  *See id.* ¶ 23.  As a result, Plaintiff voluntarily agreed to participate in the NYSDEC's investigation of the site and has and continues to incur costs in excess of $156,583.45[1] in connection with that investigation.  *See id.* ¶¶ 24-25.  These costs include payments for, *inter alia*, 69 Bloomingdale's environmental engineer's work associated with the contamination, as well as attorney's fees for negotiations with the NYSDEC.  *See id.* ¶ 25.  The NYSDEC has requested that Plaintiff conduct additional investigatory work on the Bloomingdale Site.  *See id.* ¶ 26.

The parties entered into a Site Access Agreement on January 24, 2020 that allows Defendants and their environmental consultant to enter 77 Bloomingdale

---

[1] This figure is as of December 16, 2020.  *See* December 21, 2020 Affidavit in Support of Default Judgment by Arthur Sanders ("Sanders Dec."), DE [14], ¶ 8.

Road to monitor soil vapor probes and an "indoor sub-slab probe" for a period of six months to determine if Defendants' contamination entered the Bloomingdale Site structures. *See id.* ¶ 27. Additionally, the NYSDEC divided the Coral Graphics Site into two operable units: (i) Operable Unit 01 ("OU-1") involves on-site remedial actions and the monitoring of the remedial system, onsite groundwater and vapor intrusion sampling; and (ii) Operable Unit 02 ("OU-2") involves the monitoring of offsite groundwater quality, as well as offsite vapor intrusion sampling on the Bloomingdale Site. *See id.* ¶ 28.

Plaintiff alleges that it has and will continue to incur costs associated with the future remediation, investigation and design surrounding Defendants' contamination that migrated onto the Bloomingdale Site. *See id.* ¶ 29. Further, 69 Bloomingdale maintains that Defendants are operators and/or owners of CERCLA sites under the statute and have contributed to the groundwater and soil contamination at the OU-1 and OU-2 areas, as well as under the Bloomingdale Site, and are therefore liable as owners and/or operators under CERCLA for the past and future response costs Plaintiff has and will incur in investigating and remediating the contamination on the Bloomingdale Site. *See id.* ¶ 30. According to Plaintiff, the future costs it will expend will be consistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. § 300.2, as required by CERCLA. *See id.* ¶ 32. Finally, 69 Bloomingdale conducted appraisals of the Bloomingdale Site both before and after the NYSDEC listed it as a Potential Hazardous Waste Disposal Site and requested that Plaintiff investigate the contamination, and the difference between the two

shows a "significant devaluation" of the Bloomingdale Site property. *See id.* ¶¶ 33-34; Sanders Dec. ¶¶ 9-12 ("[T]he total lost value of the Bloomingdale Property . . . is $3,850,000.").

Based on the above, 69 Bloomingdale filed its Complaint on June 11, 2020, seeking an award of: (i) damages for all costs incurred to the date of any trial; (ii) a declaratory judgment against Defendants for all costs to be incurred in the future; and (iii) damages in the amount of $4,000,000, or the amount of diminished value of the Bloomingdale Site at the time of trial. *See generally* Compl.

Plaintiff served Defendants with the Summons and Complaint on June 12, 2020, s*ee* DE [6], and the Secretary of State on June 22, 2020. *See* DE [7]-[9]. On October 8, 2020, after the time for Defendants to appear or otherwise defend this action passed, 69 Bloomingdale requested a Certificate of Default, *see* DE [10], [11], and the Clerk of the Court entered default against Defendants on October 15, 2020. *See* DE [12].

On December 23, 2020, Plaintiff filed the instant motion, which seeks an award of $3,906,583.45, inclusive of $156,583.45 in environmental costs and $3,850,000.00 in the diminished value of the Bloomingdale Site, plus statutory interest and costs. *See* Sanders Dec. ¶¶ 13-14. The motion was referred to this Court for report and recommendation on December 26, 2020. *See* December 26, 2020 Order Referring Motion. For the reasons set forth below, the Court respectfully recommends granting the motion and awarding costs in the amount of $4,006,876.88.

## II.  DEFAULT JUDGMENT STANDARD

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  *See id.* at 55(b).  Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right.  *Allstate Ins. Co. v. Howell*, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."  *Ferrera v. Tire Shop Ctr.*, No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation*

*adopted*, No. 14-cv-4657, 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted).  Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

## III. DISCUSSION

### A. <u>Liability</u>

#### 1. CERCLA

Plaintiff's first three claims are essentially the same, being reformulated in different ways to obtain relief in different forms under CERCLA.  The first two claims are brought under Section 9607 of CERCLA, for contribution and a declaratory judgment, respectively, and its third claim invokes the Declaratory Judgment Act based on Defendants' alleged liability under Section 9607.  *See* 42 U.S.C. § 9607; 28 U.S.C. §2201(a).[2]  Accordingly, the Court treats all three claims together.

CERCLA is a comprehensive federal statute with two primary purposes:  "(1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *Price Trucking Corp. v. Norampac Indus.*, 748 F.3d 75, 79 (2d Cir. 2014)

---

[2] The Declaratory Judgment Act is "procedural in nature, and merely offers an *additional* remedy to litigants." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) (emphasis in original).  Accordingly, "[t]he [Declaratory Judgment Act] provides a remedy, not a cause of action." *Springfield Hosp. v. Hofmann*, 2011 WL 3421528, at *2 (D. Vt. Aug. 4, 2011), *aff'd*, 488 F. App'x 534 (2d Cir. 2012).  In any event, Plaintiff's motion for default judgment seeks monetary damages only, and does not request declaratory relief.  *See* Sanders Dec. ¶ 14; Proposed Default Judgment, DE [14-6].

(internal quotations omitted). The statute is designed to "promote the timely cleanup of hazardous waste sites, and to ensure that the costs of such cleanup efforts [a]re born by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602, 129 S.Ct. 1870, 1874 (2009); *MPM Silicones, LLC v. Union Carbide Corp. ("MPM Silicones II")*, 966 F.3d 200, 228 (2d Cir. 2020) (noting that "CERCLA's manifest purpose [is] to 'encourage the timely cleanup of hazardous waste sites' by private parties by 'placing the cost of that cleanup on those responsible for creating or maintaining the hazardous condition'" (quoting *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005))).

"Among other measures, CERCLA 'authorizes private parties to pursue contribution or indemnification from potentially responsible parties for expenses incurred responding to environmental threats.'" *MPM Silicones II*, 966 F.3d at 214 (quoting *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 326 (2d Cir. 2000)); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) ("CERCLA empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery of expenses associated with those cleanups."). The statute "imposes strict liability on facility owners and operators, on persons who arranged for the disposal or treatment of hazardous waste at the relevant site, and on persons who transported hazardous waste to the site, often collectively referred to as potentially responsible parties." *Asarco LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). "CERCLA 'provides property owners an avenue of reprieve; it allows them to seek reimbursement of their cleanup costs from others in

the chain of title or from certain polluters — the so-called potentially responsible parties ['PRPs'].'" *Id.* (citing *Niagara Mohawk Power Corp.*, 596 F.3d at 120).  Section 9607 "authorizes the United States, a state, or 'any other person' to seek reimbursement for all removal or remedial costs associated with the hazardous materials on the property." *Niagara Mohawk Power Corp.*, 596 F.3d at 120–21 (citing 42 U.S.C. § 9607(a)(4)); *see also Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, No. 17-CV-45 (MKB), 2020 WL 5519116, at *5 (E.D.N.Y. Aug. 19, 2020).

Section 9607(a) of CERCLA imposes strict liability on:  "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2); *see also Town of Islip v. Datre*, 245 F. Supp. 3d 397, 417 (E.D.N.Y. 2017).  The term "disposal" "shall have the meaning provided in section 1004 of the Solid Waste Disposal Act [42 U.S.C.A. § 6903]," 42 U.S.C. § 9601(29), which defines the term to mean "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3); *see also Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 178 (2d Cir. 2003).  Accordingly, to make out a prima facie case under Section 9607(a)(2), a Plaintiff must establish that:  (1) the defendant is an "owner" or is otherwise liable under 42 U.S.C. § 9607(a)(1)–(4); (2) the site is a "facility," as defined by 42 U.S.C. § 9601(9); (3) there has been a release or threatened release of hazardous substances

at the facility; (4) the plaintiff incurred costs responding to the release or the threat; and (5) the costs and response conform to the National Contingency Plan. *Brooklyn Union Gas Co.*, 2020 WL 5519116, at *7. A facility is defined under CERCLA as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

*New York v. Next Millennium Realty, LLC*, 160 F. Supp. 3d 485, 506 (E.D.N.Y. 2016) (quoting 42 U.S.C. § 9601(9)). Courts have interpreted "facility" broadly. *See Brooklyn Union Gas Co.*, 2020 WL 5519116, at *7 (collecting cases). Similarly, "[t]he definition of operator is very broad." *Niagara Mohawk*, 596 F.3d at 135. Under CERCLA, "an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *United States v. Bestfoods*, 524 U.S. 51, 66-67, 118 S. Ct. 1876, 1887 (1998); *see also AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 444 (2d Cir. 2009) (holding that while the definition of "operator" within the CERCLA context is "sufficiently broad to extend beyond titular owners and day-to-day operators, [it] nevertheless implies a level of control over the hazardous substances at issue."); *Town of Islip*, 245 F. Supp. 3d at 425 ("Individuals found to be operators are usually actively involved in decision-making concerning environmental compliance or hazardous waste disposal on a regular, ongoing basis. . . . Conversely, an individual officer or director who has only limited or sporadic involvement in environmental compliance

issues or hazardous waste disposal cannot be considered an operator for CERCLA purposes.") (internal citations and quotations omitted); *City of N.Y. v. N.Y. Cross Harbor R.R. Terminal Corp.*, No. 98-CV-7227 (ARR) (RML), 2006 WL 140555, at *12 (E.D.N.Y. Jan. 17, 2006) ("[A]lthough the imposition of operator liability does not require a finding that the defendant directly participated in the day-to-day activities at the site, an operator under CERCLA must make the relevant decisions on a frequent, typically day-to-day basis.") (internal quotations and citations omitted).

Plaintiff's first cause of action alleges that Defendants, as "owners" or "operators" of "facilities" under Section 9601, released hazardous substances, as defined by Section 9601(14), from the Coral Graphics Site when they disposed of those substances into the site's leaching system, soil and groundwater. See Compl. ¶¶ 36, 42. The same hazardous substances have impacted the groundwater at and beneath the Bloomingdale Site, and vapors have been identified as present there. See id. ¶ 38. 69 Bloomingdale maintains it incurred, and will continue to incur, voluntary response costs for the investigation and remediation of the soil and groundwater on and beneath the Bloomingdale Site, and that Defendants are liable to Plaintiff for those costs under Section 9607 as operators and/or owners of the Coral Graphics Site, on which hazardous waste was disposed of. *See id.* ¶¶ 45-49.

Plaintiff's Complaint therefore adequately alleges that F.C. Properties owns the site at issue, which is considered a "facility" pursuant to CERCLA, and that Coral Graphics operates its business on it. Finally, the Complaint sufficiently establishes, as confirmed by the NYSDEC, that Defendants released hazardous substances onto

the Bloomingdale Site, that Plaintiff has incurred costs responding to that release, and that the costs conform to the National Contingency Plan. Accordingly, the Court concludes that 69 Bloomingdale has sufficiently established Defendants' liability under CERCLA for response costs, and therefore respectfully recommends that Plaintiff's motion for default judgment be granted as to its CERCLA claims.

## 2. State Law Claims

Plaintiff's state law claims for private nuisance, trespass and negligence relate to the damages it seeks in connection with the diminution in the Bloomingdale Site's property value.

### a. Private Nuisance

69 Bloomingdale's Fourth Cause of Action for nuisance alleges that Defendants' release of hazardous chemicals and the subsequent migration of those chemicals onto the Bloomingdale Site created a substantial interference with Plaintiff's right to use and enjoy its property, as well as an unreasonable risk of harm, leading to the reduction in the property's value of nearly $4,000,000. *See* Compl. ¶¶ 59-67.

"A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land. It is actionable by the individual person or persons whose rights have been disturbed." *Copart Indus. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 172 (1977); *see also New York v. Shore Realty Corp.*, 759 F.2d 1032, 1050 (2d Cir. 1985). To establish liability under a private nuisance theory, Plaintiff must show that Defendants'

conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is: "(1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities." *Copart*, 41 N.Y.2d at 569, 394 N.Y.S.2d at 172.

Plaintiff has established a valid claim for private nuisance because, as stated in the Complaint, Defendants' negligent or reckless invasion by way of its contamination interfered and continues to interfere with its use or enjoyment of the Bloomingdale Site. The presence of hazardous chemicals presents a risk of harm and led to the loss of property value. Accordingly, the Court finds that Plaintiff states a sufficient claim for private nuisance and recommends granting 69 Bloomingdale's motion for default judgment on this cause of action.

### b. Trespass

Plaintiff's Fifth Cause of Action alleges that the migration of contamination as a result of the termination of the operation of the SVE/AS system constitutes a trespass onto the Bloomingdale Site that contributed to its loss of property value. *See* Compl. ¶¶ 68-75.

"[A] trespass is an intentional physical entry onto the property of another without justification or permission." *Corsello v. Verizon New York, Inc.*, 77 A.D.3d 344, 357, 908 N.Y.S.2d 57, 69 (2d Dep't 2010), *aff'd as modified*, 18 N.Y.3d 777, 783, 967 N.E.2d 1177, 1180 (2012). "To prevail on a trespass claim under New York law, a plaintiff must show an interference with its right to possession of real property

either by an unlawful act or a lawful act performed in an unlawful manner." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 119 (2d Cir. 2013) (internal quotations, citations and alteration omitted). While the alleged trespasser need not intend or expect the damaging consequence of his intrusion, he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or what he does so negligently as to amount to willfulness. *See id.* If the trespass involves the "underground movement of noxious fluids," a plaintiff must further allege that the defendant "had good reason to know or expect that subterranean and other conditions were such that there would be passage of the pollutant from defendant's to plaintiff's land." *Id.*

The Complaint sufficiently alleges which chemicals intruded upon the Bloomingdale Site, as well as how that intrusion occurred, namely, due to Defendants' termination of the SVE/AS system. Plaintiff claims that Defendants trespassed when they intentionally shut off the system, resulting in the migration of the contamination from the Coral Graphic Site, and that they "knew or should have known that the termination of the operation . . . would result in contamination migrating onto the Bloomingdale Site." Compl. ¶¶ 70-71. Accordingly, the Court concludes that 69 Bloomingdale has sufficiently established Defendants' liability for trespass, and therefore respectfully recommends that Plaintiff's motion for default judgment be granted as to this claim

### c. Negligence

69 Bloomingdale further maintains that Defendants' negligence in shutting off the SVE/AS system, which resulted in elevated levels of contamination at the Bloomingdale Site, led to a reduction in property value.

"'[T]o establish a prima facie case of negligence under New York law, a claimant must show that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach.'" *Barone v. United States*, No. 12-cv-4103, 2014 WL 4467780, at *13 (S.D.N.Y. Sept. 10, 2014) (quoting *Farash v. Cont'l Airlines, Inc.*, 337 Fed.Appx. 7, 9 (2d Cir. 2009)); *see also Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 217CV04442ADSARL, 2018 WL 1542670, at *8 (E.D.N.Y. Mar. 29, 2018).

Consistent with this standard, landowners owe a duty to keep their land safe, which runs to tenants, patrons, invitees, and also those in close proximity for whom injury is foreseeable. *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 290, 727 N.Y.S.2d 49, 54 (2001) ("A landowner who engages in activities that may cause injury to persons on adjoining premises surely owes those persons a duty to take reasonable precautions to avoid injuring them."); *see also White Plains Hous. Auth. v. Getty Properties Corp.*, No. 13-CV-6282 NSR, 2014 WL 7183991, at *16 (S.D.N.Y. Dec. 16, 2014).

69 Bloomingdale maintains that Defendants had a duty to Plaintiff and the public to continue the operation of the SVE/AS system until all contamination on the Coral Graphics Site was removed, and that the premature termination of the system

constituted a breach of that duty.  *See* Compl. ¶¶ 76-78.  Defendants' decision not to turn the system back on once they became aware of the elevated levels of contamination on the Bloomingdale Site is an additional breach of their duty.  *See id.* ¶ 79.  Plaintiff alleges that these breaches allowed contamination to flow onto the Bloomingdale Site, leading to a reduction in property value.  *See id.* ¶ 80.  The Complaint therefore adequately establishes a breach of duty, followed by damages, and the Court recommends that Plaintiff's motion for default judgment be granted as to this cause of action.

### B. <u>Damages</u>

Once liability is established, the court must ascertain damages with "reasonable certainty."  *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014).  To prove damages, the plaintiff need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992).  An evidentiary hearing is not required so long as there is a basis, demonstrated through detailed affidavits and other documentary evidence, for the damages awarded.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

Here, Plaintiff seeks to recover damages in the amount of $3,906,583.45, inclusive of $156,583.45 in environmental costs and $3,850,000.00 in the diminished value of the Bloomingdale Site, plus statutory interest and costs.  *See* Sanders Dec. ¶¶ 13-14.  While 69 Bloomingdale's second and third causes of action seek a

declaratory judgment holding Defendants responsible for the existence of hazardous substances at the Bloomingdale Site and liable for current and future costs in connection with the remediation at the site pursuant to CERCLA and the Declaratory Judgment Act, respectively, Plaintiff's motion for default judgment requests a monetary judgment against Defendants only.  *See* Proposed Default Judgment; Sanders Dec. ¶ 14.

### 1. CERCLA Recovery Costs

Section 9607(a) of CERCLA authorizes private parties to sue for the recovery of the costs of response actions they take from the persons responsible for the release or threatened release of hazardous substances.  42 U.S.C. § 9607(a); *see also State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1041–42 (2d Cir. 1985); *City of New York v. Chem. Waste Disposal Corp.*, 836 F. Supp. 968, 971–72 (E.D.N.Y. 1993).  Any person acting consistent with the National Contingency Plan may recover any necessary response costs from responsible parties.  *See* 42 U.S.C. § 9607(a)(4)(B).  A responsible party is also liable for "damages for injury to, destruction of, or loss of natural resources," and "the costs of any health assessment or health effects study. . . ."  42 U.S.C. § 9607(a)(4)(C) and (D).

The uncontroverted documentary evidence Plaintiff submitted establishes that it incurred response costs in the total amount of one hundred fifty-six thousand, five hundred eighty-three dollars and forty-five cents ($156,583.45) for environmental site surveying, planning, investigation, testing, documenting and repairs, as well as legal support in connection with the environmental work performed.  *See* Sanders Dec. ¶¶

8, 13; Year-to-Date Environmental Expenses, Attachment 2 to Sanders Dec., DE [14-2].  Defendants took no action to challenge these expenses.  Accordingly, the Court recommends that Plaintiff be awarded $156,583.45 in damages representing 69 Bloomingdale's costs in connection with the contamination.

Plaintiff further seeks an award of prejudgment interest on its CERCLA damages.  Under CERCLA, "[p]rejudgment interest is [] mandatory."  *APL Co. Pte. v. Kemira Water Sols., Inc.*, 999 F. Supp. 2d 590, 628 (S.D.N.Y. 2014).  Section 9607(a) of CERCLA provides, in relevant part:

> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

42 U.S.C. § 9607(a).  Subchapter A of chapter 98 of Title 26 provides that the rate of interest on investments of the Hazardous Substance Superfund:

> [S]hall be at a rate determined by the Secretary of the Treasury (as of the close of the calendar month preceding the month in which the advance is made) to be equal to the current average market yield on outstanding marketable obligations of the United States with remaining periods to maturity comparable to the anticipated period during which the advance will be outstanding and shall be compounded annually.

26 U.S.C. § 9507(d)(3)(C).  The Second Circuit has held that a straightforward reading of these statutory provisions reveals that the district court is without discretion to grant anything other than compounded interest at the applicable rates set forth by

the Secretary of the Treasury. *See Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 177 (2d Cir. 2002). The Secretary of Treasury lists the 2021 superfund interest rate as .10 percent. *See* https://www.epa.gov/superfund/superfund-interest-rates. As the date of the first expenditure is listed as August 30, 2019, *see* DE [14-2], the Court calculates pre-judgment interest from that date for a total of $293.43.

Accordingly, the Court recommends that 69 Bloomingdale be awarded prejudgment interest on the total amount of damages, $156,876.88, accruing "from the later of (i) the date payment of a specified amount [was] demanded in writing, or (ii) the date of the expenditure concerned," as provided by Section 107(a) of CERCLA.

### 2. Lost Property Value

Under New York law, "the proper measure of damages for permanent injury to real property is the lesser of the decline in market value and the cost of restoration." *Jenkins v. Etlinger*, 55 N.Y.2d 35, 39, 447 N.Y.S.2d 696, 698 (1982). The plaintiff, however, need only prove one of the two measures and it becomes the defendant's burden to prove "that a lesser amount . . . will sufficiently compensate for the loss." *Id.* A plaintiff may also recover temporary damages, measured by the "reduction of the rental or usable value of the property" during the pendency of the injury. *Guzzardi v. Perry's Boats, Inc.*, 92 A.D.2d 250, 254, 460 N.Y.S.2d 78, 82 (2d Dep't 1983); *Jenkins*, 55 N.Y.2d at 39, 447 N.Y.S.2d at 698; *see also Scribner v. Summers*, 138 F.3d 471, 472 (2d Cir. 1998). Moreover, "courts applying New York law have concluded that loss-of-value damages constitute a sufficient injury in contamination suits when the plaintiff's property is directly affected by the defendant's conduct."

19

*See Benoit v. Saint-Gobain Performance Plastics Corp.*, No. 16-CV-930, 2017 WL 3316132, at *9 (N.D.N.Y. Aug. 2, 2017) ("What Defendants dismiss as 'stigma damages' have been recognized as a valid category of damages by the New York courts in environmental cases.") (quoting *87th Street Owners Corp. v. Carnegie Hill–87th Street Corp.*, 251 F. Supp. 2d 1215, 1223 (S.D.N.Y. 2002)); *Cottonaro v. Southtowns Indus., Inc.*, 213 A.D.2d 993, 993, 625 N.Y.S.2d 773, 774 (4th Dep't 1995) ("Damages from the diminished market value of real property as a result of public fear of exposure to a potential health hazard constitute consequential damages.").

The uncontroverted documentary evidence establishes that Plaintiff's real estate appraiser valued the Bloomingdale Site at $6,200,000.00 on November 14, 2019, and at $2,350,000.00 on November 22, 2019, after the listing of the site as a Potential Hazardous Waste Disposal Site. *See* Attachments 3 and 4 to the Sanders Dec., DE [14-3], [14-4].    Accordingly, the Court recommends awarding 69 Bloomingdale $3,850,000.00, representative of the difference in property value.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment against Coral Graphics and F.C. Properties be granted, and that 69 Bloomingdale be awarded $4,006,876.88, inclusive of $156,876.88 in recovery costs and prejudgment interest and $3,850,000.00 in loss of property value, plus statutory interest to be determined through the date of entry of judgment.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below.  Plaintiff is directed to serve a copy of it on Defendants via first-class mail and file proof of service by ECF within three days of the date below.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:     Central Islip, New York
           July 14, 2021

                              /s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge